UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| J.C. PENNEY CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION H-06-958 |
| | § | |
| M/V MAERSK NANTES, et al., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION & ORDER**

In the words of Justice O'Connor, "[t]his is a maritime case about a train wreck." *See Norfolk S. Railway Co. v. Kirby*, 543 U.S. 14, 18, 125 S. Ct. 385 (2004). J.C. Penney Purchasing Corporation ("J.C. Penney Purchasing") entered into several through bills of lading on May 16, 2005 with the defendant Maersk Sealand (the "ocean carrier") for carriage of its cargo from Hong Kong to Fort Worth, Texas. For the ocean leg of the journey, the ocean carrier transported J.C. Penney Purchasing's cargo across the Pacific Ocean to Los Angeles, California. After the cargo cleared Customs in Los Angeles on May 27, 2005, J.C. Penney Purchasing transferred title and risk of loss for the goods to its parent company, J.C. Penney Corporation ("J.C. Penney Corp."), the plaintiff in the instant action. To ensure delivery in Fort Worth, Texas, the ocean carrier subcontracted with defendant BNSF Railway ("BNSF") for the inland leg of the voyage. However, on May 31, 2005, while plaintiff's cargo was en route to Texas, BNSF's train carrying the cargo derailed in Arizona. Much of the cargo was either destroyed or seriously damaged, but J.C. Penney Corp. was able to resell some of its merchandise on the secondary market.

1

Plaintiff brings the instant case to recover its ultimate losses resulting from the derailment. The defendants have jointly moved for summary judgment on the grounds that plaintiff lacks standing to bring its claims arising from bills of lading to which it was not a party. In response, plaintiff argues that its standing is conferred by virtue of its cargo ownership. After considering the arguments of counsel, the evidence of record, and the applicable law, the court agrees with the plaintiff. For the reasons that follow, the defendants' objections to plaintiff's summary judgment evidence are OVERRULED, and the defendants' joint motion for summary judgment (Dkt. 27) is DENIED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On or about May 16, 2005, J.C. Penney Purchasing and the ocean carrier entered into two non-negotiable waybills for carriage of cargo from Hong Kong to their ultimate destination in Fort Worth, Texas. Pursuant to these waybills, the ocean carrier was to perform the ocean carriage portion of the voyage itself, while the inland carriage component from Los Angeles to Fort Worth was subcontracted to BNSF. On May 27, 2005, the vessel arrived in Los Angeles and J.C. Penney Purchasing's cargo was unloaded from the vessel. After the cargo cleared U.S. Customs, title and risk of loss for the cargo was transferred from J.C. Penney Purchasing to the plaintiff, J.C. Penney Corp. On May 31, 2005, during the course of inland carriage by BNSF, the train carrying the plaintiff's cargo derailed in Arizona. On June 2 and June 7, 2005, J.C. Penney Corp. paid J.C. Penney Purchasing for the cargo. However, although plaintiff did not pay for the goods until after the derailment, it is undisputed that at the time of the loss J.C. Penney Corp. held title subject to the ocean carrier's bills of lading.[1]

---

[1] Defendants disagree with this finding, arguing that "[t]here is no presentation of evidence reflecting the actual title of passage [sic]." *See* Dkt. 36 ¶ 5. This statement, as shown by the record, is incorrect. In plaintiff's response to the joint motion for summary judgment, plaintiff submitted the affidavit testimony of Erin Buhler, a J.C. Penney Corp. employee, who testifies that "there was

On March 22, 2006, ten months after the derailment, plaintiff filed its original complaint against the defendants to recover damages for its cargo losses. *See* Dkt. 1. On April 10, 2006, the ocean carrier filed its answer to plaintiff's complaint and a cross-claim against defendant BNSF. *See* Dkt. 5. Despite their apparent adversity, the defendants jointly filed the instant motion for summary judgment on May 15, 2007, claiming that plaintiff has no standing to pursue this action. *See* Dkt. 27. Before turning to the merits of the defendants' motion, however, the court will first set out the proper procedure for evaluating every motion for summary judgment.

---

a transfer of ownership (title and risk of loss) of these goods from J.C. Penney Purchasing to JCPenney [Corp.] after the release of merchandise from U.S. Customs on 5/27/05." *See* Dkt. 34, Ex. B. The defendants offer no evidence to refute this testimony; rather, they object that the affidavit is not competent summary judgment evidence because the affiant has no personal knowledge of the subject matter of her affidavit. Again, this argument is incorrect. Ms. Buhler testifies that her affidavit is "based upon [her] own personal knowledge," *see* Dkt. 34 ¶ 18, and with no evidence to the contrary, the court accepts this testimony as true for summary judgment purposes. The defendants' objection to the competency of the affiants' testimony is overruled. The court finds that J.C. Penney Corp. owned the cargo at issue at the time of the loss.
    Further, the defendants object to plaintiff's summary judgment evidence on two additional grounds: (1) plaintiff never disclosed the identities of the affiants in Rule 26 disclosures; and (2) the documents referenced in plaintiff's response have never been previously produced. *See* Dkt. 36 at 2. First, under Federal Rule of Civil Procedure 26, parties are generally entitled to discover evidence relevant to the "claim or defense of any party," and parties are under an initial duty to provide identifying information about "each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses." FED. R. CIV. P. 26(a)(1)(A), (b)(1). Here, plaintiff never disclosed the names of the affiants, apparently because the issue of standing was not raised in any of the defendants' pleadings prior to their joint motion for summary judgment. Obviously, plaintiff cannot produce discoverable evidence on a defense about which it only becomes aware *after* the close of the discovery period. Thus, the defendants' objection on this issue is overruled.
    Lastly, the defendants object to the documents referenced in plaintiff's response on the grounds that they have not been previously produced. *See* Dkt. 36 at 2. By contrast, plaintiff contends that these documents were indeed produced during discovery. Dkt. 38 at 4. Whatever the truth may be, the court need not discern it at this time. The records at issue establish, at best, that J.C. Penney Corp. paid for the cargo after the derailment, a fact that has no bearing on the ultimate issue currently before the court in the motion for summary judgment. The court's disposition depends only on the testimony of Erin Buhler regarding the transfer of title to the goods *before* the derailment. *See* Dkt. 34, Ex. B. Accordingly, the defendants' objection to the records attached to the plaintiff's affidavits is overruled as moot.

3

## II. STANDARD OF REVIEW

Summary judgment should be granted if the record, taken as a whole, together with any affidavits, shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *N.Y. Life Ins. Co. v. Travelers Ins. Co.,* 92 F.3d 336, 338 (5th Cir.1996). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex,* 477 U.S. at 323-25). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little,* 37 F.3d at 1075.

If the moving party meets this burden, however, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Wallace v. Tex. Tech Univ.,* 80 F.3d 1042, 1046-47 (5th Cir.1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Little,* 37 F.3d at 1075; *Wallace,* 80 F.3d at 1047. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Wallace,*

80 F.3d at 1048 (quoting *Little,* 37 F.3d at 1075); *see also S. W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 494 (5th Cir.1996). The court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands v. Wash. Capital Dus, Inc.,* 66 F.3d 89, 92 (5th Cir.1995), *as revised on denial of reh'g,* 70 F.3d 26 (5th Cir.1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.,* 477 U.S. at 248.

### III. ANALYSIS

The gravamen of defendants' motion is that because the plaintiff is neither a shipper or consignee, it has no cause of action for relief under the bills of lading. *See* Dkt. 27 at 5-6. As a result, defendants move the court to grant summary judgment in their favor and dismiss plaintiff's complaint. *Id.* at 7. Plaintiff responds that although it was not a named consignee on the bills of lading, it owned the goods at the time of loss, and its right to sue arises from its proprietary interest in the cargo. The court agrees.

"Although the contract of carriage is between the shipper and the carrier, a consignee or transferee . . . of a bill of lading is also the proper party to sue the carrier for loss or damage to the goods or breach of the contract of carriage. *One who suffers damage to a proprietary interest is also a proper plaintiff.*" 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 10-10 (4th ed.

5

2004) (emphasis added); *see Compagnie De Navigation v. Mondial United Corp.*, 316 F.2d 163, 171-72 (5th Cir. 1963) (holding that even though the plaintiff was not a shipper or consignee, it had standing to sue because it was an "equitable assignee" that sustained a substantial financial loss as an commissions agent to which each party looked for payment); *see also United States v. Central Gulf Lines, Inc.*, 699 F.2d 243 (5th Cir. 1983).

In *Central Gulf Lines*, the Fifth Circuit held that a titleholder of goods has standing to sue under the contract of carriage. *See* 699 F.2d at 245. That case involved a shipment of urea between Louisiana and South Vietnam in early 1974. *Id.* at 244. The United States, acting through the Agency for International Development ("AID"), purchased the urea from American suppliers and intended the delivery of the cargo to the South Vietnamese as a loan. *Id.* After the United States purchased the fertilizer for its ally, South Vietnam, the latter contracted with Central Gulf Lines ("Central") for the ocean carriage of the cargo to Saigon. *Id.* During the voyage, the South Vietnamese sold the title for the goods to Vietnamese importers who later produced the bills of lading at the docks in Saigon to receive the urea. *Id.* Upon inspection of the goods, however, an independent firm discovered quantities of urea less than what the bills of lading specified. *Id.* The United States sued the carrier to recover the shipping costs and the value of the missing urea.[2] *Id.* The Fifth Circuit found that the United States lacked standing to sue, but its reasoning rested on the fact that the United States was neither a signatory to the contract of carriage nor did it hold title to

---

[2] Under the contract of carriage both Central and the South Vietnamese government were liable for any cargo losses. Given the historical context, it is not surprising that the United States only sued Central, the ocean carrier, as any possible recovery against South Vietnam, the shipper, was effectively foreclosed after the fall of Saigon on April 30, 1975. *See Minh Surrenders, Vietcong in Saigon*, N.Y. TIMES, Apr. 30, 1975, at A1 ("President Duong Van Minh announced today the unconditional surrender of the Saigon Government and its military forces to the Vietcong.").

the goods at the time of the loss. *Id.* at 245. According to the court, "[t]he proper parties to sue for the value of any missing urea are the South Vietnamese government [the shipper] or the private Vietnamese importers *that bought title to the cargo.*" *See id.* (emphasis added). Thus, in this circuit, shippers and consignees are not the only parties with standing to sue for damages to goods subject to a contract of carriage—assignees and titleholders of the goods also may maintain a cause of action against cargo carriers.

J.C. Penney Corp. adduced evidence that although it was not a listed consignee or shipper on the waybills at issue, it held title to the damaged cargo at the time of the loss. *See* Dkt. 34, Ex. B. Thus, pursuant to controlling Fifth Circuit precedent, J.C. Penney Corp. has standing to sue the defendants under the through bills of lading. *See Central Gulf Lines*, 699 F.2d at 245. The defendants' motion for summary judgment challenging plaintiff's standing to bring this suit is without legal merit and must be denied.

### III. CONCLUSION

For the reasons described above, plaintiff has standing to sue under the contracts for carriage as a titleholder of the damaged cargo. Defendants' objections to plaintiff's summary judgment evidence are OVERRULED, and defendants' motion for summary judgment (Dkt. 27) is DENIED.

Signed at Houston, Texas on July 12, 2007.

_____
Gray H. Miller
United States District Judge